[Sac. No. 6796.   In Bank.   July 19, 1957.]

GERALD M. GEIGER, Petitioner, v. THE BOARD OF SUPERVISORS OF BUTTE COUNTY et al., Respondents.

Thelen, Marrin, Johnson & Bridges and Edward J. Ruff for Petitioner.

Charles H. Andrews, County Counsel, and Francis R. Crable, Assistant County Counsel, for Respondents.

McDonough & Wahrhaftig as Amici Curiae on behalf of Respondents.

GIBSON, C. J.—Petitioner seeks a writ of mandate to compel the Board of Supervisors of Butte County to suspend and reconsider an ordinance providing for a sales and use tax and either to repeal the ordinance or submit it to the referendum vote of the electors of the county.

In 1955 the Legislature enacted a uniform local sales and use tax law, hereinafter referred to as the Bradley-Burns Act. (Rev. & Tax. Code, §§ 7200-7207.) It authorizes a county board of supervisors to adopt an ordinance imposing a one per cent tax on retail sales of tangible personal property and a use tax at the same rate, and it provides that the county must credit against the amount of the county tax the amount of sales and use taxes due to cities under ordinances having substantially the same provisions.

The Butte County ordinance, which became effective on January 1, 1957, levies a sales tax upon retailers at the rate of one per cent of their gross receipts from all tangible personal property sold in the county, and it also imposes a use tax at the same rate. As authorized by the Bradley-Burns Act, the ordinance provides that it shall become inoperative if any city in the county increases the rate of its sales and use tax.

Prior to the effective date of the ordinance, the board was presented with a properly certified petition demanding that the ordinance be forthwith repealed or that it be submitted to the voters of the county. After receiving an opinion of the attorney general which concluded that the ordinance was not subject to referendum (28 Ops. Atty. Gen. 351), the board refused to comply with the demands of the petition.

█ Mandamus is a proper remedy to test the propriety of the action of the board of supervisors. █ The writ is not being used here to enjoin or prevent the collection of a tax (see Rev. & Tax. Code, §§ 6931, 7202, 7203) but, rather, to compel the board to submit an ordinance to referendum, and it is settled that a writ of mandate is available for that purpose. (*Cf. Blotter* v. *Farrell,* 42 Cal.2d 804, 812-813 [270 P.2d 481]; *Simpson* v. *Hite,* 36 Cal.2d 125 [222 P.2d 225]; *Dwyer* v. *City Council,* 200 Cal. 505 [253 P. 932].)

The principal question is whether section 1 of article IV of the California Constitution operates to withhold from the voters of a county the right of referendum with respect to tax measures such as those authorized by the Bradley-Burns Act. This section reads, in part, as follows: "The second power reserved to the people shall be known as the referendum. No act passed by the Legislature shall go into effect until 90 days after the final adjournment of the session of the Legislature which passed such act, *except acts calling elections, acts providing for tax levies or appropriations for the usual current expenses of the State, and urgency measures. . . .* Upon the presentation to the Secretary of State within 90 days after the final adjournment of the Legislature of a petition . . . signed by qualified electors equal in number to 5 per cent of all the votes cast for . . . Governor at the last preceding general election at which a Governor was elected, asking that any act or section or any part of any act of the Legislature be submitted to the electors for their approval or rejection, the Secretary of State shall submit to the electors for their approval or rejection, such act, or section or part of such act . . . and no such act or section or part of such act shall go into effect until and unless approved by a majority of the qualified electors voting thereon. . . . The . . . referendum powers of the people are hereby further reserved to the electors of each county, city and county, city and town of the State to be exercised under such procedure as may be provided by law. . . . Nothing contained in this section shall be construed as affecting or limiting the present or future

powers of cities or cities and counties having charters adopted under the provisions of section 8 of article XI of this Constitution. . . . This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." (Italics added.)

█ The constitutional provisions which reserve the referendum powers to the people expressly except "tax levies or appropriations for the usual current expenses of the State." It is apparent that the same exception applies to the referendum powers reserved to the county electors, and, therefore, the Constitution, standing alone, does not secure to county electors the right of referendum over tax levies or appropriations for the usual current expenses of county government. (*Cf. Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619, 623-624 [191 P.2d 426].) The next question is whether the Constitution prohibits the Legislature from granting to county electors the power of referendum over tax measures. █ It is not disputed that the revenue from the tax in question is to be used for the usual current expenses of the county, and it follows that the ordinance is not subject to referendum unless the Legislature has authority to expand and extend the referendum powers reserved by section 1 of article IV of the Constitution and unless it has exercised that authority.*

█ The listing of exceptions in the Constitution amounts to a declaration of policy against subjecting legislation concerning the excepted matters to a vote of the people. While section 1 of article IV does not expressly prohibit the Legislature from extending the right of referendum to include a county sales tax ordinance, any holding that such measures

---

*Since the revenue derived from the Butte County ordinance is to be used for current county expenses, we need not decide here whether the words "for the usual current expenses of the State" in section 1 of article IV refer only to "appropriations" or whether they also apply to "tax levies." In this connection it may be noted, however, that the Legislative Counsel, in an opinion (No. 6164) dated June 27, 1947, concluded that the phrase "for the usual current expenses of the State" does not modify the words "tax levies." This conclusion was based on the ballot argument, on contemporaneous construction at the 1913 session of the Legislature, and on the continuous practice of making state taxes effective immediately regardless of use of the proceeds therefrom for capital outlay as well as usual current expenses. The question has never been directly passed upon by this court, but it was assumed without discussion in several cases that tax levies must be for usual current expenses in order to be exempt from referendum. (See *Hunt* v. *City of Riverside,* 31 Cal.2d 619, 623-624 [191 P.2d 426]; *Gilbert* v. *Ashley,* 93 Cal.App.2d 414, 415 [209 P.2d 50]; *Roth Drug, Inc.* v. *Johnson,* 13 Cal.App.2d 720, 729 [57 P.2d 1022].)

are subject to referendum would be contrary to this policy and against the clear implication of the constitutional provision. Section 1 is expressly made self-executing, and, in addition, the Legislature is empowered to enact legislation to facilitate its operation. ■ It is obvious, however, that the authorization to adopt procedural regulations does not include the power to enact substantive measures which would extend the scope of the basic referendum right. There is no provision authorizing substantive changes, and we have concluded that it was not intended that the Legislature should have the power to extend or expand the scope of referendum. Our conclusion is further supported by the fact that the framers of section 1 considered it necessary, in order not to restrict the referendary powers of the people in chartered cities, to provide expressly that such powers should not be affected by the constitutional provision.

■ There is nothing in the Bradley-Burns Act which indicates that the Legislature intended that county sales and use tax ordinances should be subject to referendum, but, to the contrary, both the general plan as embodied in the act and the specific language used in authorizing the adoption of such ordinances show that the Legislature recognized that the Constitution prohibits the use of referendum with respect to this type of county legislation. The act contemplates an integrated, uniform system of city and county sales and use taxation. The counties are given authority to impose sales and use taxes as a means of raising additional revenue, and the cities are furnished with a plan of state administration which will relieve them from operating collection systems of their own. The taxpayers will receive the benefit of a scheme which will free them from the burden of complying with differing regulations of state and local taxes, avoid the necessity of making payments and reports to several governmental bodies, and permit all auditing to be done by a single agency. The method devised provides for the equitable sharing of revenue by a county and the cities within its boundaries. It is intended that there will be concurrent action by a county and the cities in the county for the purpose of adopting an integrated system of local sales and use taxation, and the city ordinances adopted under the authority of the act are apparently made contingent upon the existence of a county tax ordinance. Retailers are entitled under the statute to credit against the county tax the amount of sales and use taxes due to the city in which the business is located, provided the city tax is levied under an

ordinance which incorporates certain specified provisions. A city system adopted pursuant to the act is substantially the same as that prescribed for the county and the state, and the city tax, like that of the county, is to be administered by the State Board of Equalization. Insofar as a city ordinance is contingent upon the existence of a county ordinance, it is clear that subjecting the county ordinance to referendum would suspend the city ordinance and seriously hamper the fiscal affairs of the city. Moreover, if the county ordinance were subject to referendum, the effectiveness of negotiations between the board of supervisors and the cities for the purpose of securing an integrated system would be greatly limited.

An even stronger indication of intention that referendum should not be permitted appears in the language used by the Legislature in authorizing boards of supervisors to adopt sales and use tax ordinances. The act provides: "Any county may *by action of its board of supervisors* adopt a sales and use tax in accordance with the provisions of this part." (Italics added.) (Rev. & Tax. Code, § 7201.) Ordinarily, a county exercises its powers through its board of supervisors (Gov. Code, § 23005), and it would have been unnecessary to refer to the "board of supervisors," in addition to the "county," if the intent had been to treat sales tax ordinances as ordinary legislation subject to referendum. The fact that the statute not only provides that a county can adopt such a tax, but in addition specifies that this is to be done by action of the board of supervisors, plainly shows that the Legislature intended to limit to boards of supervisors the power to enact such ordinances. (See *Barlotti* v. *Lyons,* 182 Cal. 575, 577-584 [189 P. 282]; but *cf. Blotter* v. *Farrell,* 42 Cal.2d 804, 811-812 [270 P.2d 481].)

The only statutory provisions which might tend to support petitioner's claim that the constitutional provision has been construed by the Legislature as permitting it to extend the power of referendum are found in sections 1651-1653 of the Elections Code, which were enacted prior to the Bradley-Burns Act. Section 1651 provides that ordinances relating to an election, ordinances required by law to take immediate effect and urgency measures "shall take effect immediately" and that "all other ordinances" shall become effective 30 days from the date of final passage. Section 1652 provides, in part, "If a petition protesting against the adoption of an ordinance is presented to the board of supervisors, prior to its effective date," the ordinance shall be suspended and reconsidered.

Under section 1653, if the board does not repeal the ordinance against which a petition has been filed, the board shall submit it to the voters, and it shall not become effective unless it is approved by a majority of the voters.

The Elections Code does not expressly provide that tax ordinances shall be subject to referendum, and the language of these sections does not compel the conclusion that the Legislature sought to extend the referendum power to embrace sales and use tax ordinances contrary to section 1 of article IV as we have construed it. Sections 1651-1653 can be given such a construction only by implication upon the theory that tax ordinances fall within the general category of "all other ordinances" and that the Legislature contemplated that all of such other ordinances would be subject to referendum because their effective dates are postponed. The Elections Code, however, may be reasonably interpreted as providing for the use of referendum only with respect to such ordinances as are constitutionally subject to referendum, and we must adopt this interpretation since any other construction of the statutes would render them unconstitutional. It is settled, of course, that statutes will be construed, if their language permits, so as to avoid unconstitutionality. (*Busch* v. *Turner,* 26 Cal.2d 817, 820 [161 P.2d 456, 171 A.L.R. 1063] ; *Collins* v. *Riley,* 24 Cal.2d 912, 915 [152 P.2d 169] ; *County of Los Angeles* v. *Legg,* 5 Cal.2d 349, 353 [55 P.2d 206].) The subsequent enactment of the Bradley-Burns Act lends further support to this construction of the Elections Code because, as we have seen, the act indicates that the Legislature recognizes that the Constitution exempts county sales and use tax ordinances from referendum.

Although it is the general rule that referendum provisions are to be liberally construed in favor of the reserved power, it is settled that consideration must also be given to the consequences of applying the rule. (*Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619, 628-629 [191 P.2d 426] ; *Chase* v. *Kalber,* 28 Cal.App. 561, 569-570 [153 P. 397].) If essential governmental functions would be seriously impaired by the referendum process, the courts, in construing the applicable constitutional and statutory provisions, will assume that no such result was intended. (*Hunt* v. *Mayor & Council of Riverside,* 31 Cal.2d 619, 628-629 [191 P.2d 426] ; *Chase* v. *Kalber,* 28 Cal.App. 561, 569-570 [153 P. 397].) One of the reasons, if not the chief reason, why the Constitution excepts from the referendum power acts of the Legislature providing

for tax levies or appropriations for the usual current expenses of the state is to prevent disruption of its operations by interference with the administration of its fiscal powers and policies. The same reasoning applies to similar acts of a county board of supervisors, and it is particularly applicable to taxation under the Bradley-Burns Act which, as we have seen, provides for *integrated systems* of local sales and use taxes. An essential function of a board of supervisors is the management of the financial affairs of county government, which involves the fixing of a budget to be used as the basis for determining the amount and rate of taxes to be levied. Before the board can properly prepare a budget, it must be able to ascertain with reasonable accuracy the amount of income which may be expected from all sources, and, when it has adopted ordinances imposing taxes, it cannot make an accurate estimate unless it knows whether the ordinances will become effective. These are some of the reasons why the people have entrusted to their elected representatives the duty of managing their financial affairs and of prescribing the method of raising money.

In view of all the circumstances we have concluded that, under the most reasonable construction of the constitutional and statutory provisions, the Butte County ordinance is not subject to referendum.

The alternative writ heretofore issued is discharged, and the peremptory writ is denied.

Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.