TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 93-402 |
| of | : | |
| | : | May 21, 1993 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE DIANE E. WATSON, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following questions:

1. Do counties have the authority to increase their local sales tax by 0.5 percent beyond the 1.25 percent of the Bradley-Burns Uniform Local Sales and Use Tax Law and a 1 percent transactions and use tax that some counties have already imposed?

2. If counties have such authority to increase their local sales tax, is that authority immediately available?

3. If counties have such authority to increase their local sales tax, are they required to share the tax proceeds with cities or other agencies?

CONCLUSIONS

1. Counties have the authority to increase their local sales tax by 0.5 percent beyond the 1.25 percent of the Bradley-Burns Uniform Local Sales and Use Tax Law and a 1 percent transactions and use tax that some counties have already imposed.

2. Such authority of counties to increase their local sales tax is immediately available but collection of the tax is dependent upon first obtaining the approval of two-thirds of the county board of supervisors, the approval of a majority of the county electorate, and the administrative services of the State Board of Equalization.

3. Counties are not required to share their tax proceeds with cities or other agencies when exercising their authority to increase the local sales tax.

1.                                                                93-402

ANALYSIS

In 76 Ops.Cal.Atty.Gen. 98 (1993), we recently examined the authority of a county to enact a transactions and use tax pursuant to the terms of Revenue and Taxation Code section 7285.[1]  Section 7285 provides:

"The board of supervisors of any county may levy a transactions and use tax at a rate of 0.25 or 0.5 percent, if the ordinance or resolution proposing that tax is approved by a two-thirds vote of all members of the board of supervisors and the tax is approved by a majority vote of the qualified voters of the county voting in an election on the issue.  The transactions and use tax shall conform to [sections 7251-7274]."

We concluded that the State Board of Equalization (hereafter "Board") may not administer a tax enacted by a county under the provisions of section 7285 unless it is first approved by a majority of the county electorate as specified in the statute. (Id., at p. 102.)  We are now asked to address three additional questions related to the terms of section 7285.

Before analyzing each question, we believe a brief overview of local sales and use tax law is warranted.  Under the "Sales and Use Tax Law" (§§ 6000-7176), the state imposes a sales tax at a specified rate upon retailers for the privilege of selling tangible personal property in this state.  (§§ 6051-6051.5.)  The state also imposes a complementary use tax on the storage, use, or other consumption of tangible personal property purchased from any retailer.  (§§ 6201-6201.5.)  Payment of the sales tax generally constitutes an exemption from liability for the use tax.  (§ 6401.)  The Board administers these state taxes.  (§ 7051.)

Under the "Bradley-Burns Uniform Local Sales and Use Tax Law" (§§ 7200-7212; hereafter "Bradley-Burns"), counties, cities, and redevelopment agencies may by ordinance impose an additional sales and use tax.  The local agencies are required to contract with the Board for the performance of all functions incident to the administration of these taxes.  (§§ 7202, 7202.6.)

Under the "Transactions and Use Tax Law" (§§ 7251-7274), certain local districts may impose a transactions and use tax for specified purposes.  (See, e.g., §§ 7252.15, 7252.30, 7262.5.)  A transaction tax, like a sales tax, is imposed for the privilege of selling personal property at retail.  The complementary use tax under this statutory scheme, like the state and Bradley-Burns use tax, is imposed upon the storage, use, or other consumption of personal property purchased from any retailer.  These local taxes must also be administered by the Board.  (§ 7270.)

Finally, under "Additional Local Taxes" (§§ 7280-7288.6), a variety of local tax levies are authorized by the Legislature, including the authority of a county to enact a transactions and use tax in conformity with the Transactions and Use Tax Law.  (§§ 7285-7285.5.)

1.  Increasing Local Sales Taxes

The first question to be resolved is whether a county may increase its portion of the local sales tax above the 1.25 percent allowed by Bradley-Burns, assuming that the county (or a district in the county) has already adopted a transactions and use tax totaling 1 percent.  We conclude that it has such authority under the terms of section 7285.

---

[1]  All references hereafter to the Revenue and Taxation Code are by section number only.

As indicated above, counties, cities, and redevelopment agencies are authorized under Bradley-Burns to impose a sales and use tax. (§§ 7200-7212.) The tax rate is limited by statute to 1.25 percent (§§ 7202, 7203), and the Board is prohibited from administering a local government's sales and use tax ordinance if the statutory tax rate limitation is exceeded (§ 7203.5).

While section 7285 authorizes "a transactions and use tax at a rate of 0.25 percent or 0.5 percent," the statute also requires the county's tax ordinance to be in conformity with the provisions of sections 7251-7274. One of the latter requirements is that "[t]he combined rate of all [transactions and use] taxes imposed pursuant to [sections 7251-7274] in any county shall not exceed 1.5 percent" (§ 7251.1). Since the question presented assumes that the counties or the districts in the counties already have imposed a transactions and use tax totaling 1 percent,[2] an additional 0.5 percent adopted under section 7285 would conform to the section 7251-7274 provisions.

A transactions and use tax operates in the same general manner as a sales and use tax. (See §§ 7261-7262; 76 Ops.Cal.Atty.Gen., *supra*, 99.) "A transactions and use tax is commonly referred to as a `sales tax.'" (73 Ops.Cal.Atty.Gen. 111, 111-112, fn. 2 (1990).) We need not distinguish here between the two taxes for purposes of determining whether the sales tax may be increased by a county beyond the 1.25 percent of Bradley-Burns and a previously imposed 1 percent transactions and use tax. Section 7285 does allow for such an increase.

Necessarily, however, we must again address the question whether the authority granted under section 7285 is available to counties due to the statute's prior voter approval requirement. In our 1990 opinion previously cited, we concluded that section 7285 was unconstitutional in allowing the electorate to vote on a tax ordinance. (73 Ops.Cal.Atty.Gen., *supra*, 114-117.)[3] In our more recent opinion, however, we indicated that Justice George's concurring opinion in *Rider* v. *County of San Diego* (1991) 1 Cal.4th 1, 16-25, "now casts doubt upon our 1990 conclusion." (76 Ops.Cal.Atty.Gen., *supra*, 101, fn. 3.) Presented with the question again, we now conclude that a court would follow Justice George's analysis in ruling section 7285 to be constitutional.

In our 1990 opinion, we indicated that a court could reach the contrary conclusion and determine "that section 7285 is constitutional" (73 Ops.Cal.Atty.Gen., *supra*, 117), since none of the cases we relied upon to support our conclusion were directly in point (see *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 836-839; *City of Westminster* v. *County of Orange* (1988) 204 Cal.App.3d 623, 627-628; *City of Atascadero* v. *Daly* (1982) 135 Cal.App.3d 466, 470; *Myers* v. *City Council of Pismo Beach* (1966) 241 Cal.App.2d 237, 242-244; see also *Fenton* v. *City of Delano* (1984) 162 Cal.App.3d 400, 405-407; *Community Health Assn.* v. *Board of Supervisors* (1983) 146 Cal.App.3d 990, 993-995; *Dare* v. *Lakeport City Council* (1970) 12 Cal.App.3d 864, 866-869). "Section 7285, on the other hand, sets forth a different mechanism." (73 Ops.Cal.Atty.Gen., *supra*, 114.)

---

[2] In fact, the districts in California's counties have adopted transactions and use tax rates in varying amounts.

[3] Article 2, section 9, subdivision (a) of the Constitution provides : "The referendum is the power of the electors to approve or reject statutes . . . except . . . statutes . . . providing for tax levies or appropriations for usual current expenses of the State." Article 2, section 11 reserves similar powers to the local electorate under procedures established by the Legislature. We concluded that section 7285 granted a referendum power to the voters of a county in contravention of these two constitutional provisions.

Subsequent to our 1990 opinion, the Court of Appeal in *City of Woodlake* v. *Logan* (1991) 230 Cal.App.3d 1058 relied upon the above cited line of cases with respect to an existing authority to tax (Gov. Code, § 37100.5), ruling that a later enacted voter approval requirement was unconstitutional. *Woodlake*, like the other cases, may be distinguished from the section 7285 situation, since section 7285 contains the voter approval requirement in the original grant of the authority to tax.

This chronology brings us to *Rider* v. *County of San Diego, supra*, 1 Cal.4th 1. The majority in *Rider* decided the case upon the basis of section 4 of article XIIIA of the Constitution. Justice George, joined by Justice Panelli, reasoned that the court's decision should be based upon statutory grounds, and in so doing, addressed the issue presented by the voter approval terms of Government Code section 53722, a statute similar to section 7285. Justice George's analysis was as follows:

". . . Defendant argues that insofar as section 53722 requires a local government to obtain prior approval of the local electorate before imposing a special tax, the statute improperly authorizes a local tax referendum and thereby assertedly violates the provisions of article II, sections 9, subdivision (a) and 11 of the California Constitution (hereafter article II, sections 9(a) and 11). Although the Court of Appeal in this case agreed with defendant's contention, in my view the Court of Appeal's conclusion rests on a misinterpretation of this court's decision in *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832 (hereafter *Geiger*).

"In *Geiger, supra*, 48 Cal.2d 832, our court was faced with the question whether a county board of supervisors had acted lawfully in refusing to hold a referendum election on a local tax ordinance when a properly certified petition demanding such a referendum had been timely filed with the county prior to the effective date of the ordinance. In defense of its action, the county maintained that the constitutional referendum authority with respect to local legislation did not extend to local tax measures. Relying on the circumstance that the then-applicable constitutional provision--former article IV, section 1 of the California Constitution--specifically excepted `acts calling elections, *acts providing for tax levies or appropriations for the usual current expenses of the State*, and urgency measures' (italics added) from the reach of the referendum power applicable to *state* legislation, the county argued that a similar limitation was implicit in the constitutionally reserved referendum power applicable to *local* legislation.

"The *Geiger* court agreed with the county's contention, concluding that `the same exception [applicable to state referenda] applies to the referendum powers reserved to the county electors, and therefore, the Constitution standing alone, does not secure to county electors the right of referendum over tax levies or appropriations for the usual current expenses of county government.' (*Geiger, supra,* 48 Cal.2d 832, 836.)

"The plaintiffs in *Geiger* contended, however, that even if the constitutionally reserved referendum power did not, of its own force, extend to local tax measures, the Legislature, by several statutory enactments, had granted the measures. The *Geiger* court rejected the contention, finding no indication that the Legislature had intended to subject either local taxes in general, or the specific tax at issue in that case, to the referendum power. (*Geiger, supra*, 48 Cal.2d at pp. 837-839.)

"Although this conclusion completely disposed of the plaintiffs' contention, the *Geiger* court in dictum, went on to address the question whether the Legislature had the constitutional authority to expand the referendum power beyond the scope of the power reserved by the Constitution. The *Geiger* court indicated that in its view the Legislature did not have such power, stating: `The listing of exceptions in the Constitution amounts to a declaration of policy against subjecting legislation concerning the excepted matters to a vote of the people. While section 1 of article IV does not expressly prohibit the Legislature from extending the right of referendum to include a county sales tax ordinance, any holding that such measures are subject to referendum would be contrary to this policy and against the clear implications of the constitutional provision.' (*Geiger, supra*, 48 Cal.2d at pp. 836-837.)

"The Court of Appeal in the present case, relying on this broad language in *Geiger*, concluded that section 53722 is unconstitutional under article II, sections 9(a) and 11--the successor provisions to the constitutional provisions at issue in *Geiger*--insofar as the statute requires a local government or district to obtain the approval of its electorate before imposing a tax. The Court of Appeal was of the opinion that under *Geiger* any statute that requires voter approval of a local tax is unconstitutional.

"For a number of reasons, I disagree with the Court of Appeal's conclusion. First, as already noted, the broad language in *Geiger* on which the Court of Appeal relied was clearly dictum, because in *Geiger* there was no statutory provision that purported to authorize the use of the referendum against a tax ordinance. The *holding* of *Geiger* was simply that *the referendum power reserved to the people by the state Constitution* with respect to state legislation, *does not extend to tax measures.* In view of the well-established principles concerning the breadth of the legislative power retained by the Legislature (see, e.g., *Collins* v. *Riley* (1944) 24 Cal.2d 912, 915-916; *Fitts* v. *Superior Court* (1936) 6 Cal.2d 230, 234), and the absence of any specified constitutional provision purporting to restrict the Legislature's authority to extend by statute the people's referendum power, I believe the broad dictum in *Geiger* is questionable.

"Second, even assuming the dictum in *Geiger* were correct and should be followed, in my view that language would not apply to a statutory provision like section 53722. Unlike the hypothetical statute to which the *Geiger* dictum was addressed, section 53722 does not purport to subject local tax measures to the general referendum process, but rather imposes, as part of enabling legislation granting taxing authority to the local governmental entity, a voter-approval *precondition* that qualifies the local entity's fundamental authority to impose the tax. In contrast to a referendum, which is initiated by a petition signed by a relatively small percentage of the electorate and operates to suspend the effectiveness of a duly enacted legislative act that would otherwise go into effect of its own accord (see, e.g., *Whitmore* v. *Carr* (1934) 2 Cal.App.2d 590, 592), the voter-approval provision of section 53722 is a legislatively mandated requirement that applies in every instance without initiation by the voters and is an essential prerequisite to the valid enactment of any tax measure to which the section applies. The inclusion of such a condition precedent in enabling legislation is quite distinct from a referendum and, as explained hereafter, does not pose the same hazards of uncertainty for local fiscal affairs that the *Geiger* court found implicit in the exercise of the referendum power with regard to tax measures.

"The *Geiger* court, in concluding that the explicit limitations on the statewide referendum power also applied to the local referendum power, explained the purpose underlying the relevant constitutional provision as follows: `One of the reasons, if not the chief reason, why the Constitution excepts from the referendum power acts of the Legislature providing for tax levies or appropriations for the usual current expenses of the state is to prevent disruption of its operations by interference with the administration of its fiscal powers and policies. The same reasoning applies to similar acts of a county board of supervisors . . . . Before the board can properly prepare a budget, it must be able to ascertain with reasonable accuracy the amount of income which may be expected from all sources, and, when it has adopted ordinances imposing taxes, it cannot make an accurate estimate unless it knows whether the ordinance will become effective. (*Geiger, supra,* 48 Cal.2d 832, 839-840.)

"As this passage indicates, the *Geiger* court reasoned that while the constitutional referendum provision generally affords the electorate the authority to call for a referendum on any legislative act, the Constitution withholds the referendum power with regard to tax measures in recognition of the fact that when a legislative body establishes tax levels in connection with the budget process, the governmental entity must be able to rely on the receipt of those tax revenues and cannot have the viability of such measures continually placed in doubt by the possibility that a referendum may be initiated by a relatively small percentage of the electorate. (See also *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 629-630; *Carlson* v. *Cory* (1983) 139 Cal.App.3d 724, 730.) This reason for limiting the referendum power, however, does not apply to a voter-approval requirement that, under the governing statutes, constitutes an essential precondition to a local entity's authority to impose a particular tax. Because such a prior-voter-approval requirement always will be known in advance, the local legislative body will be aware that it lacks the power to levy the tax *until* voter approval has been obtained, and thus the local entity will not include the anticipated tax revenue in its enacted budget until after the electorate has approved the tax. Once such approval has been obtained, annual budget measures imposing the tax would be exempt from the referendum process, just like any other tax measure. (See Elec. Code, § 3751, subd. (a)(3); Gov. Code, § 25123, subd. (c) [tax ordinances take effect immediately].)

"To my knowledge, in the many years that have passed since the *Geiger* decision (*supra*, 48 Cal.2d 832), the limitations on the referendum power embodied in article II, sections 9(a) and 11, have not generally been understood to preclude the Legislature, in enacting enabling legislation in the tax field, from conditioning a local entity's taxing authority on prior voter approval of the tax. For example, in our decision in *Richmond, supra,* 31 Cal.3d 197, we noted in passing that the 1976 legislation that created the Los Angeles County Transportation Commission had conditioned the commission's authority to impose a tax on prior voter approval of the tax measure. (*Id*. at p. 199 [citing Pub. Util. Code, § 130354].) Indeed, in the very legislation that created the local agency involved in the case before us and granted that agency the authority to impose a one-half cent sales tax, the Legislature specifically conditioned the Agency's imposition of such a tax on the prior approval of a majority of the local electorate. (See § 26271.) Because the Legislature was willing to grant the Agency the authority to impose a tax only in the event the tax was supported by a majority of voters in a local election, if article II, sections 9(a) and 11, were interpreted to render unconstitutional any statutory provision imposing a voter-approval requirement with regard to a local tax, as defendant suggests, the

Agency might well lose its statutory authority to impose *any* tax, even one approved by a two-thirds vote of the electorate. The other, numerous local governmental entities whose authority to impose a tax are similarly dependent upon voter approval might well suffer a similar fate. In view of the number of instances in which the Legislature has chosen to condition a grant of taxing authority to a local entity on the approval of the local electorate, the claim that the *Geiger* decision, *supra*, 48 Cal.2d 832, should be interpreted to preclude such legislation is untenable." (Id., at pp. 20-24.)[4]

Although Justice George's concurring opinion in *Rider* did not represent the opinion of the court (the manner in which the court disposed of the case made it unnecessary to examine the statutory grounds addressed by Justice George), we believe that it would now be followed when a court directly rules upon the constitutionality of such statutes as section 7285. The basic reason for the constitutional prohibition against referenda of tax measures is inapplicable when the statutory grant of power to a local agency is conditioned upon voter approval. Notice of the voter requirement is provided beforehand in the grant of authority, allowing the local legislative body to effectively plan its budget needs based upon its known financial resources. No previously existing power of taxation is subject to repeal by such a legislative grant of authority. To the extent 73 Ops.Cal.Atty.Gen., *supra*, 111, conflicts with Justice George's analysis, it is disapproved.

Accordingly, we conclude in answer to the first question that section 7285 is constitutional and that pursuant to its terms counties have the authority to increase their local sales tax by 0.5 percent beyond the 1.25 percent Bradley-Burns sales and use tax and a 1 percent transactions and use tax that some counties have already imposed.

2. Obtaining Administrative Services After Electorate Approval

The second question presented concerns whether the authority to increase the local sales tax in the described circumstances is immediately available to counties. We conclude that while the authority is immediately available to propose the tax measure, collection of the tax will necessarily be delayed to obtain the requisite voter approval and administrative services of the Board.

Having found section 7285 as the authority for a county to increase the local sales tax above the 1.25 percent Bradley-Burns rate and a previously imposed 1 percent transactions and use tax, we look to the statute's various terms in determining whether the authority is immediately available. First, the board of supervisors of a county must adopt the tax ordinance by a two-thirds vote of its members. Next, an election must be held giving the county electorate the opportunity to approve the measure by a majority vote. Section 7285 also requires that "[t]he transactions and use tax shall conform to [sections 7251-7274]."

Looking at the controlling provisions of sections 7251-7274, we find two which affect our conclusion. Section 7265 states:

---

[4] The Court of Appeal's decision in *City of Woodlake* v. *Logan, supra,* 230 Cal.App.3d 1058, was not analyzed by Justice George. As previously mentioned, *Woodlake* concerned an existing statutory taxation power (Gov. Code, § 37100.5) affected by a subsequently enacted statutory voter approval requirement. The Court of Appeal felt compelled to follow *Geiger* v. *Board of Supervisors, supra,* 48 Cal.2d 832 (id., at p. 1067), even though *Geiger* must be recognized as only dictum respecting the issue presented in *Woodlake.*

"No ordinance adopted pursuant to this part shall be operative on other than the first day of a calendar quarter, or prior to the first day of the first calendar quarter, commencing more than 110 days after the adoption of the ordinance."

Section 7270 additionally provides in part:

"Prior to the operative date of any ordinance imposing a transactions and use tax pursuant to this part, the district shall contract with the board to perform all functions incident to the administration and operation of the ordinance. If the district has not contracted with the board prior to the operative date of its ordinance, it shall nevertheless so contract and, in that case, the operative date shall be the first day of the first calendar quarter following the execution of the contract."

Sections 7265 and 7270 allow for an orderly administrative transition between proposing and collecting the new tax levy.

Accordingly, we conclude in answer to the second question that counties have the authority to increase their local sales tax by 0.5 percent above the 1.25 percent Bradley-Burns sales and use tax and a 1 percent transactions and use tax that some counties have already imposed, but collection of the tax must necessarily be delayed until (1) the county board of supervisors has adopted the ordinance by a two-thirds vote, (2) an election has been held at which a majority of the voters have approved the measure, and (3) the administrative services of the Board have been obtained pursuant to the terms of sections 7265 and 7270 made applicable to the county's tax ordinance by section 7285.

3. Sharing the Tax Proceeds

The third question presented concerns whether the authority to increase the local sales tax in the described circumstances is conditioned upon the counties sharing the tax proceeds with cities and other agencies. We conclude that it is not.

Again we look to the governing terms of section 7285. Nowhere contained therein is a requirement that the tax proceeds be shared by the counties with cities or other agencies. We know of no such statutory language applicable to a tax levy imposed under the terms of section 7285.

Accordingly, in answer to the third question, we conclude that counties are not required to share their tax proceeds with cities or other agencies with respect to an increase in the local sales tax pursuant to the terms of section 7285 by 0.5 percent beyond the 1.25 percent Bradley-Burns sales and use tax and a 1 percent transactions and use tax that some counties have already imposed.

\* \* \* \* \*