TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
| --- | --- | --- |
| OPINION | : | No. 17-702 |
| of | : | April 27, 2018 |
| XAVIER BECERRA Attorney General | : | |
| CATHERINE BIDART Deputy Attorney General | : | |

_____

THE HONORABLE ASSEMBLY MEMBER ANNA M. CABALLERO has requested an opinion on the following question:

Does the power of referendum apply to a resolution by the City of Hollister approving the execution of an agreement to sell real property for development, pursuant to an approved long-range property management plan for disposing a dissolved redevelopment agency's property?

CONCLUSION

The City of Hollister's resolution approving the execution of an agreement to sell real property for development, pursuant to an approved plan for disposing a dissolved redevelopment agency's property, is not subject to referendum.

1

ANALYSIS

**Background**

The question here arises from the Legislature's 2011 dissolution of redevelopment agencies and redirection of their assets to fund core local governmental services.[1]  For decades, the Legislature authorized local governments to create such agencies to redevelop areas of blight under the Community Redevelopment Law.[2]  When an area was redeveloped and its property values increased, the resulting increase in property tax revenue was attributed to the redevelopment, and the increased revenue (known as "tax increment") was used to fund the agency.[3]

In 2011, however, facing a fiscal crisis, the Legislature dissolved redevelopment agencies and instituted a process for "successor agencies"[4] to expeditiously wind down the

---

[1] See 2011 Cal. Stat., 1st Ex. Sess. 2011-2012, ch. 5 (eff. Jun. 29, 2011); see also 2012 Cal. Stat., ch. 26 (eff. June 27, 2012).  Our prior opinions arising from the dissolution of redevelopment agencies include 99 Ops.Cal.Atty.Gen. 67 (2016) and 97 Ops.Cal.Atty.Gen. 75 (2014).

[2] Health & Saf. Code, §§ 33000 et seq.; see 1963 Cal. Stat., ch. 1812, pp. 3677 et seq. (reorganizing Community Redevelopment Law); 1951 Cal. Stat., ch. 710, § 1, pp. 1922 et seq. (renaming and codifying Community Redevelopment Act as Community Redevelopment Law in Health and Safety Code sections 33000 et seq.); 1945 Cal. Stat., ch. 1326, pp. 2478 et seq. (enacting Community Redevelopment Act); see also *Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 169 (explaining main purpose of "Community Redevelopment Law was 'to expand the supply of low- and moderate-income housing, to expand employment opportunities for jobless, underemployed, and low-income persons, and to provide an environment for the social, economic, and psychological growth and well being of all citizens' . . . through the elimination of blight," quoting Health and Safety Code section 33071 and citing *id.* sections 33030, 33035-33039).

[3] Cal. Const., art. XVI, § 16; Health & Saf. Code, §§ 33670 et seq.; *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 246-247; *Redevelopment Agency v. County of San Bernardino* (1978) 21 Cal.3d 255, 259.

[4] Health & Saf. Code, §§ 34171, subd. (j) ("'Successor agency' means the successor entity to the former redevelopment agency as described in Section 34173"), 34173, subd. (b) ("Except for those provisions of the Community Redevelopment Law that are repealed, restricted, or revised pursuant to the act adding this part, all authority, rights, powers, duties, and obligations previously vested with the former redevelopment agencies, under

2

17-702

former redevelopment agencies' affairs and to redirect tax revenues to local core government services.[5]  These winding-down activities take place under the direction of an oversight board, generally comprised of representatives for various entities that receive local property tax revenue.[6]  The process requires a successor agency to submit a long-range property management plan to its oversight board for approval, and then to the state's Department of Finance for its approval.[7]

---

the Community Redevelopment Law, are hereby vested in the successor agencies").

[5] See Health & Saf. Code, § 34177, subd. (h); *California Redevelopment Assn. v. Matosantos*, *supra*, 53 Cal.4th at pp. 241, 251, 262; *Macy v. City of Fontana* (2016) 244 Cal.App.4th 1421, 1431-1432; see also 12 Witkin, Summary of California Law (11th ed. 2017) Real Property, § 869 ("The county auditor-controllers for each county must determine the amount of property taxes that would have been allocated to the redevelopment agencies had they not been dissolved ([Health & Saf. Code, § 34182, subd. (c)]) and must reallocate those funds, through the Redevelopment Property Tax Trust Fund, to local agencies and school entities and to successor agencies for making payments on debts ([Health & Saf. Code, § 34183])").

For further background on the dissolution of redevelopment agencies, see *Cuenca v. Cohen* (2017) 8 Cal.App.5th 200, 210-212; 8 Miller & Starr (4th ed. 2017 supp.) California Real Estate, § 30:1.  We note that, to a limited extent, redevelopment has been reauthorized.  For an overview of the relevant legislation, see 8 Miller & Starr, *supra*, § 30:2 (summarizing post-dissolution legislation that authorizes local governments to: (1) remediate blighted property, without using tax-increment funding [Health & Saf. Code, §§ 25403-25403.8], (2) enhance infrastructure using funding that includes tax increment from consenting taxing agencies, but not schools [Gov. Code, §§ 53398.50-53398.88], (3) promote economic development using public funds [Gov. Code, §§ 52200-52203], and (4) form community revitalization authorities that create community revitalization plans and address unemployment, crime, infrastructure, and affordable housing, using funding that includes tax increment from consenting taxing agencies, but not schools [Gov. Code, §§ 62000-62208]).

[6] The oversight board is a seven-member board of appointees who "have fiduciary responsibilities to holders of enforceable obligations and the taxing entities that benefit from distributions of property tax and other revenues." (Health and Saf. Code, § 34179, subd. (i); *id.* subds. (a), (b) & (j) [prescribing composition of oversight board].)  The oversight board's duties include, among other things, directing the successor agency to dispose of the dissolved redevelopment agency's assets and property, as specified. (Health & Saf. Code, § 34181.)

[7] Health & Saf. Code, § 34191.5, subd. (b).

17-702

We are informed that the City of Hollister passed Resolution 2017-139 on June 5, 2017, authorizing its city manager to enter into a Disposition and Development Agreement for the sale and development of real property (known as the "400 Block property"), which would implement the long-range plan[8] approved by the oversight board and by the Department of Finance.[9]  The parties to the agreement include the City, Del Curto Brothers Group, and the Community Foundation for San Benito County.[10]  The resolution

---

[8] The plan directs the use of "a disposition and development agreement or development agreement as a tool to assure that disposition of the 400 Block property facilitates development of the site as a keystone property in Downtown Hollister to support economic development." (Resolution No. 2014-02 OB [attaching City of Hollister Long Range Property Management Plan, filed October 3, 2013, amended January 2, 2014, p. 32, available at http://www.dof.ca.gov/Programs/Redevelopment/Long_Range_Property_ Management/LRPMPC_Plans/documents/Hollister_LRPMP.pdf [as of March 26, 2018].) The plan directs the successor agency to negotiate with the City a first-option agreement to buy the property within an 18-month period. (*Ibid*.)  The goal of that agreement is to allow non-profit activities to continue on the property until a commercial or mixed-use development agreement is negotiated. (*Ibid*.)  The plan further provides that, if the negotiation with the City does not result in a property transfer to the City, the successor agency itself must issue a request for qualifications to enter into a development agreement for a mixed-use or all-commercial building of 30,000 to 40,000 square feet, designed to conform to specified guidelines, with proceeds of the sale to be distributed and used as provided by the redevelopment dissolution law. (*Id*., pp. 32-33.)

[9] See City of Hollister Resolution 2017-139, June 5, 2017; Resolution No. 2014-02 OB, *supra*, pp. 4-5 [oversight board's approval of disposing properties as set forth in plan]; Department of Finance Letter to City of Hollister Successor Agency, Feb. 21, 2014, http://www.dof.ca.gov/Programs/Redevelopment/Long_Range_Property_Management/L RPMPC_Letters/documents/Hollister_LRPMP_Letter.pdf [as of April 6, 2018] (Department of Finance's approval of disposing properties as set forth in plan).

We received informal input, from a law firm retained by the referendum proponents, asserting that the City acted improperly by not announcing it was acting as the successor agency, a separate public entity (see Health & Saf. Code, § 34173, subd. (g)), when it passed the resolution (the City Council members also serve as the successor agency).  An alleged impropriety, however, is not challengeable by referendum. (See *Memorial Hospitals Assn. v. Randol* (1995) 38 Cal.App.4th 1300, 1311 ["Simply put, unlawful action is addressed in the courts, not in the voting booth"].)  Because an alleged impropriety in passing the resolution does not speak to the availability of referendum, we decline to address it further.

[10] City of Hollister Resolution 2017-139, *supra*, p. 4.

4

recites several preceding resolutions, including ones that authorized a request for proposals; accepted the Del Curto Brothers' proposal in partnership with Community Foundation for San Benito County to construct a mixed-use development; approved the proposal as conforming to the long-range plan; and authorized an exclusive negotiating agreement.[11]

We have been asked whether Hollister's Resolution 2017-139 is subject to referendum. To determine the answer to this question, we must look to the principles governing the power of referendum, discussed below.

### Referendum Power

The power of referendum refers to an electorate's authority to reject a recent enactment by a legislative body. Referendum allows voters to veto statutes and local ordinances and resolutions before they become effective.[12] If a referendum petition challenging an ordinance or resolution is timely filed and certified to be sufficient, its effective date is suspended and the enacting legislative body must reconsider the ordinance or resolution.[13] If the body does not repeal the act, it must be submitted to the voters.[14] The act then does not go into effect unless a majority votes in its favor.[15] If the voters instead reject the act, or if the legislative body repeals the act without submitting it to the voters, the same act cannot be reenacted for at least one year from the date of its rejection or repeal.[16]

---

[11] *Id*. at pp. 2-3.

[12] *City of Morgan Hill v. Bushey* (2017) 12 Cal.App.5th 34, 39; *Yesson v. San Francisco Municipal Transportation Agency* (2014) 224 Cal.App.4th 108, 122 ("any legislative act may be . . . subject to referendum, regardless of whether that act is denominated an 'ordinance' or 'resolution,'" quoting *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 787, fn. 9).

[13] Elec. Code, §§ 9237, 9239; *Midway Orchards v. County of Butte* (1990) 220 Cal.App.3d 765, 774, 776, 779 (noting that statute governing referendum procedure of ordinance is silent on resolution, and determining such procedure shall also apply to referendum of resolution).

[14] Elec. Code, § 9241.

[15] Elec. Code, § 9241.

[16] Elec. Code, § 9241.

Although the California Constitution vests legislative power in the Legislature, "the people reserve to themselves the powers of initiative and referendum."[17] The Constitution expressly recognizes that referendum power extends to voters at the level of a city and county,[18] which "is generally co-extensive with the legislative power of the local governing body."[19] The legislative decisions of a city council or board of supervisors are thus presumed to be subject to referendum unless there is a showing of contrary legislative intent.[20]

Still, there are some limits on the referendum power.[21] For instance, the Constitution provides that the power does not apply to "urgency statutes, statutes calling elections, and statutes providing for tax levies or appropriations for usual current expenses of the State."[22] Further, the power does not apply to administrative acts, only to legislative ones.[23] Courts therefore look to whether an act is "legislative" or "administrative" to determine whether referendum applies.[24] The "legislative-administrative dichotomy reflects a determination to balance the ideal of direct legislation by the people against the

---

[17] Cal. Const., art. IV, § 1. The initiative power is identical in purpose and function to referendum power, however, an "initiative is drafted by its proponents and is the very law whose enactment is sought, whereas a referendum seeks to set aside a law that has been drafted by others." (*Lin v. City of Pleasanton* (2009) 176 Cal.App.4th 408, 418-419.)

[18] Cal. Const. art. II, § 11, subd. (a).

[19] *City of Morgan Hill v. Bushey*, *supra*, 12 Cal.App.5th at p. 40, quoting *DeVita v. County of Napa*, *supra*, 9 Cal.4th at pp. 775-776.

[20] See *DeVita v. County of Napa*, *supra*, 9 Cal.4th at pp. 775-776; *Geiger v. Board of Supervisors* (1957) 48 Cal.2d 832, 839; *Fishman v. City of Palo Alto* (1978) 86 Cal.App.3d 506, 509.

[21] 55 Ops.Cal.Atty.Gen. 383, 385-388 (1972) (explaining limits on scope of local initiative and referendum powers).

[22] Cal. Const., art. II, § 9, subd. (a); *Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 778 (constitutional limits on state referendum power also apply to local referendum power).

[23] *San Bruno Committee for Economic Justice v. City of San Bruno* (2017) 15 Cal.App.5th 524, 530, review denied (Jan. 10, 2018); *Redevelopment Agency v. City of Berkeley*, *supra*, 80 Cal.App.3d at p. 167 ["It is plain that only ordinances of a municipality which involve an exercise of the legislative prerogative are subject to the initiative and referendum"].

[24] See *Voters for Responsible Retirement v. Board of Supervisors*, *supra*, 8 Cal.4th at pp. 778-779.

6

17-702

practical necessity of freeing municipal governments from time-consuming and costly referenda on merely administrative matters."[25]  "The plausible rationale for this rule espoused in numerous cases is that to allow the referendum or initiative to be invoked to annul or delay the executive or administrative conduct would destroy the efficient administration of the business affairs of a city or municipality."[26]

How then to identify whether a given act is legislative (and therefore subject to referendum) or administrative (and therefore not subject to referendum)?  Courts have provided the following guidance:

> Legislative acts generally are those which declare a public purpose and make provisions for the ways and means of its accomplishment. Administrative acts, on the other hand, are those which are necessary to carry out the legislative policies and purposes already declared by the legislative body. . . . [T]he classic and often quoted test [is]: "(T)he power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it." [Citation omitted.] The test is not precise, and there is some inconsistency of approach between the published decisions.[27]

Additionally, courts have identified two instances that indicate the Legislature has withdrawn referendum power:[28]

> [F]irst, when there is a 'definite indication' by the Legislature that it intends to preempt the discretion of a local legislative body to legislate; second, when

---

[25] *Fishman v. City of Palo Alto*, *supra*, 86 Cal.App.3d at p. 509.

[26] *San Bruno Committee for Economic Justice v. City of San Bruno*, *supra*, 15 Cal.App.5th at p. 530, quoting *Lincoln Property Co. No. 41, Inc. v. Law* (1975) 45 Cal.App.3d 230, 234.

[27] *Fishman v. City of Palo Alto, supra*, 86 Cal.App.3d at p. 509; see *San Bruno Committee for Economic Justice v. City of San Bruno, supra*, 15 Cal.App.5th at p. 530 (summarizing legislative-administrative test); *Pettye v. City And County of San Francisco* (2004) 118 Cal.App.4th 233, 240-243 (explaining in detail development of legislative-administrative jurisprudence); see also *City of San Diego v. Dunkl* (2001) 86 Cal.App.4th 384, 402 (stating difficulty in some cases of distinguishing between legislative and administrative acts).

[28] See *DeVita v. County of Napa, supra*, 9 Cal.4th at p. 776.

the Legislature rather than preempt local legislative action has instead sought to delegate legislative power so exclusively to a local governing body as to indicate its intent to preclude the citizens' otherwise coextensive right of referendum.[29]

In the first instance, referendum power is deemed withdrawn when the Legislature removes the decision-making authority of a local legislative body over a particular subject.[30] In the second instance, referendum power is deemed to have been withdrawn where the Legislature has specifically and exclusively delegated decision-making over a matter of statewide concern to a local legislative body.[31] Both circumstances may be conceptualized as a means of identifying an administrative matter.[32]

Finally, in determining whether referendum power exists as to a particular matter, "it is settled that consideration must also be given to the consequences of applying the rule."[33] For example, "[i]f essential governmental functions would be seriously impaired by the referendum process, the courts, in construing the applicable constitutional and statutory provisions, will assume that no such result was intended."[34]

**Legislative-Administrative Analysis**

As we explain in more detail below, we conclude that Hollister's Resolution 2017-139 is administrative rather than legislative in character, and therefore not subject to referendum.

*The Legislature Designated Successor Agencies to Dispose of Dissolved Redevelopment Agencies' Assets*

"Where the Legislature has enacted a statewide policy and has assigned to a

---

[29] *Empire Waste Management v. Town of Windsor* (1998) 67 Cal.App.4th 714, 718, citing *DeVita v. County of Napa*, *supra*, 9 Cal.4th 763, 776.

[30] *City of Morgan Hill v. Bushey*, *supra*, 12 Cal.App.5th at p. 40 ("referendum power [cannot] be used in areas in which the local legislative body's discretion [is] largely preempted by statutory mandate," brackets in original, quoting *DeVita v. County of Napa*, *supra*, 9 Cal.4th at pp. 775-776).

[31] *Voters for Responsible Retirement v. Board of Supervisors*, *supra*, 8 Cal.4th at p. 779.

[32] See *Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 511.

[33] *Geiger v. Board of Supervisors*, *supra*, 48 Cal.2d at p. 839.

[34] *Ibid*.

particular local body the duty to implement that policy, the Legislature thereby places implementation of the statewide policy beyond the reach of initiative and referendum."[35] We think this captures what the Legislature did in assigning a successor agency, following approval by its oversight board and the Department of Finance, the duty to dispose of a dissolved redevelopment agency's property.

The redevelopment dissolution law requires a successor agency to prepare a long-range property management plan that includes an inventory of the dissolved redevelopment agency's property including specific information, such as previous development proposals for each property.[36] After the successor agency's long-range plan is approved by its oversight board and the Department of Finance, the plan governs the disposition of the dissolved agency's property.[37] The Legislature provided in clear terms that "the plan shall govern, and supersede all other provisions relating to, the disposition and use of the real property assets of the former redevelopment agency."[38]

The redevelopment dissolution law leaves no room for voter input on a settled long-range property plan. An approved plan may be amended, but only once, and only if the Department of Finance approved it before January 1, 2016, and the amendment related to retaining parking facilities and lots for governmental use.[39]

Furthermore, the City's resolution occurred at the tail end of the statutorily prescribed process for disposing of a dissolved redevelopment agency's property. The successor agency's plan is the product of that process, and the City's resolution follows a string of decisions to implement that plan, further illustrating that the resolution is an administrative act implementing an established legislative policy and therefore not subject to referendum.[40]

*A City Implementing a Long-Range Property Management Plan Acts as an Administrative Agent of the State*

Our conclusion that the resolution is not subject to referendum finds additional

---

[35] *Memorial Hospitals Assn. v. Randol*, *supra*, 38 Cal.App.4th at p. 1313.

[36] Health & Saf. Code, § 34191.5, subds. (b) & (c).

[37] Health & Saf. Code, § 34191.3, subd. (a).

[38] Health & Saf. Code, § 34191.3, subd. (a).

[39] Health & Saf. Code, § 34191.3, subd. (b).

[40] See *San Bruno Committee for Economic Justice v. City of San Bruno*, *supra*, 15 Cal.App.5th at p. 534.

support by analogizing a city's implementation of a successor agency's long-range property management plan to sell and develop property, to a redevelopment agency's implementation of a redevelopment plan.

The implementation of a redevelopment plan was never subject to referendum because local agencies acting in redevelopment matters were acting as administrative arms of the state.[41] We believe it is appropriate also to characterize local agencies as administrative arms of the state when they act to implement redevelopment wind-up matters. As such, it would follow that Hollister's resolution to sell and dispose of property as provided in the successor agency's approved long-range plan is not subject to referendum either.

*The Potential Consequences of a Referendum Here Indicate that It Cannot Apply*

That the referendum power cannot apply here is perhaps best demonstrated by its potential consequences. If Hollister's resolution were subject to referendum, the disposition and development of the property pursuant to the approved long-range plan could potentially never happen. The electorate could indefinitely prevent the sale of the property for development (as set forth in the approved long-range plan) by rejecting every attempt by Hollister to implement the plan. That would completely thwart the redevelopment dissolution law's purposes to dispose of redevelopment agencies' property expeditiously in order to fund core government services. It would also conflict with the statutory requirement that the dissolved agencies' property be disposed of as provided in a long-range property management plan approved by a successor agency's oversight board and the Department of Finance.

In short, referendum would frustrate the essential goals of the redevelopment dissolution law.[42]

---

[41] *PR/JSM Rivara LLC v. Community Redevelopment Agency of City of Los Angeles* (2009) 180 Cal.App.4th 1475, 1483; *Gibbs v. City of Napa* (1976) 59 Cal.App.3d 148, 154 ("When a municipal council, as here, declares a need for the redevelopment agency to function, the agency thereby becomes a state agency when acting in redevelopment matters. The council functions as an administrative arm of the state because it pursues a state concern and effectuates a state legislative policy. The functioning of such an agency is beyond the reach of, or control by, a municipal initiative or referendum election"); *Andrews v. City of San Bernardino* (1959) 175 Cal.App.2d 459, 460-463 (city council acts as administrative arm of state in adopting resolution for redevelopment project under Community Redevelopment Law).

[42] Proponents of the referendum have suggested to us that the resolution is legislative because Hollister could have chosen a different way to implement the plan. We are not

**Conclusion**

For the foregoing reasons, we conclude that the City's resolution is not subject to referendum.

*****

---

persuaded, because even administrative acts can involve the exercise of some limited discretion, and the limited amount of discretion used to implement the plan is insufficient to characterize the resolution as a legislative act.

17-702