[Civ. No. 43556. First Dist., Div. Four. Nov. 20, 1978.]

JOYCE FISHMAN et al., Plaintiffs and Appellants, v.
CITY OF PALO ALTO, Defendant and Respondent;
PALO ALTO CONDOMINIUM OWNERS ASSOCIATION,
Real Party in Interest and Respondent.

**COUNSEL**

Ralph R. Gallagher and John Hargis for Plaintiffs and Appellants.

Glynn P. Falcon, Jr., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Roy C. Abrams, City Attorney, Marilyn Norek Taketa, Senior Assistant City Attorney, Louis B. Green, Donald H. Maynor and Carolyn B. Rose, Assistant City Attorneys, for Defendant and Respondent.

Crist, Crist, Griffiths, Bryant, Schulz & Biorn, Robert A. Biorn and Patricia J. Gebala for Real Party in Interest.

## OPINION

**CHRISTIAN, J.**—Joyce Fishman and others have appealed from a judgment upon demurrer, dismissing their petition for a writ of mandate. Appellants sought a writ to compel defendant City of Palo Alto to submit to referendum a resolution permitting construction at an apartment building of a shelter for parked cars.

The petition incorporated as exhibits documents which present a full history of the dispute. Because the trial court acted on the basis of a demurrer, we may accept as true the following allegations of the petition. Real party in interest Palo Alto Condominium Owners Association is the exclusive authorized agent of owners of condominiums at 101 Alma Street with regard to common areas. In August 1976, the association filed a "Change of District (Zone Change) Application" requesting approval of a proposed covered parking facility at 101 Alma Street. The proposed "screened enclosure" would cover 43 of the 56 existing parking spaces, and would be adjacent to residential properties fronting on Palo Alto Avenue and Emerson Street.

The city council in 1958 had rezoned 101 Alma Street into a Planned Community ("P-C") district (Ord. No. 1802) pursuant to Palo Alto Municipal Code chapter 18.68. In March 1977, the city council by resolution modified the development plans approved by Ordinance 1802 to permit construction of the screened enclosure (Res. No. 5382).

A petition was then circulated requesting that the city council rescind Resolution 5382, or submit the issue to a referendum. Sufficient valid signatures were collected to place the issue on a ballot. The city council refused to rescind the resolution or to submit the issue to a referendum. The question in this litigation is whether Resolution 5382, modifying the development plans approved by Ordinance 1802, was a legislative act subject to a referendum or an administrative act not so subject.

■ Although the powers reserved by the people of initiative and referendum (see Cal. Const., art. IV, § 1) are to be liberally construed to uphold those powers whenever it is reasonable to do so, the people may invoke the power of referendum only with respect to matters that are legislative. An administrative act is not subject to referendum. (See, e.g., *Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 457 [85 Cal.Rptr. 809, 467 P.2d 537]; *Lincoln Property Co. No. 41, Inc.* v. *Law* (1975) 45 Cal.App.3d 230, 233-234 [119 Cal.Rptr. 292].) This legislative-administrative dichotomy reflects a determination to balance the ideal of direct legislation by the people[1] against the practical necessity of freeing municipal governments from time consuming and costly referenda on merely administrative matters.[2] (Note, *supra*, 3 Stan.L.Rev. 497, 504, 509; see also Note, *supra*, 29 Stan.L.Rev. 819, 831-836.)

Legislative acts generally are those which declare a public purpose and make provisions for the ways and means of its accomplishment. Administrative acts, on the other hand, are those which are necessary to carry out the legislative policies and purposes already declared by the legislative body. (See *Lincoln Property Co. No. 41, Inc.* v. *Law, supra*, 45 Cal.App.3d 230, 234, and cases cited.) *Seaton* v. *Lackey* (1944) 298 Ky. 188, 193 [182 S.W.2d 336, 339] stated the classic and often quoted test: "[T]he power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it." (See, e.g., *Lincoln Property Co. No. 41, Inc.* v. *Law, supra*, 45 Cal.App.3d 230, 234.) The test is not precise, and there is some inconsistency of approach between the published decisions. (See Note, *supra*, 3 Stan.L.Rev. 497, 503, and cases cited.)

---

[1] " 'Every law which the people in person have not ratified is invalid; it is not a law.' " (Note, *Limitations on Initiative, and Referendum* (1951) 3 Stan.L.Rev. 497 at p. 497, quoting Rousseau, Contrat Social (1762) ch. XV.)

[2] "For example, the City of Palo Alto, California (population 56,000), which has a permissive referendum provision in its city charter, had no recorded referendum on rezoning before 1970, and has had only four such referenda since 1970. Interview with Francis Escherich, Office of City Attorney, in Palo Alto (Mar. 2, 1977). The planning commission of Palo Alto, by contrast, receives an average of 12 rezoning petitions annually. Of the petitions 78% were approved in 1974, 88% in 1975, and 75% in 1976. Interview with James Glanville, Palo Alto Planning Commission, in Palo Alto (Mar. 3, 1977). Since 1970, only 5.5% of the rezoning petitions have been referred to the Palo Alto voters, yet Palo Alto is considered to have a more active electorate than neighboring cities such as Mountain View, Santa Clara and San Jose. Interview with Byron Sher, Palo Alto Mayor 1975-76, in Palo Alto (Mar. 2, 1977). *See also* W. CROUCH, D. MCHENRY, J. BOLLEN & S. SCOTT, STATE AND LOCAL GOVERNMENT IN CALIFORNIA 89 (1952)." (Note, *The Proper Use of Referenda in Rezoning* (1977) 29 Stan.L.Rev. 819, 822, fn. 18.)

■ A case closely analogous to ours is *Lincoln Property Co. No. 41, Inc.* v. *Law, supra,* 45 Cal.App.3d 230, which also concerned a P-C district. The legislative act in the instant case occurred in 1958 with the passage of Ordinance 1802, rezoning 101 Alma Street into a P-C district and permitting construction of a high-rise apartment building there. The Palo Alto City Council thereby prescribed a new policy or plan; it declared a public purpose concerning land use at 101 Alma and made provisions for the ways and means of accomplishing that purpose by adopting the development plans. Resolution 5382, which modified the development plans approved by the 1958 ordinance, is merely an administrative act pursuant to the planned community zoning already adopted by the city council. The resolution, in the view of the city council, carried out the policies and purposes of the P-C district already declared in the 1958 ordinance. Persuasive in this regard is the trial court's reasoning that the city has allowed the association only to cover existing parking spaces, not, e.g., to convert new land into a parking lot or garage. Approval of the parking enclosure did not amount to a substantial alteration of the P-C district and therefore was not tantamount to a rezoning of the district. Cases holding land use modifications to be legislative acts subject to referenda involved substantial land use changes. (See, e.g., *Wheelwright* v. *County of Marin, supra,* 2 Cal.3d 448, 457-458 [construction of access road to previously planned community; "Roadways are of sufficient public interest and concern to weight the scales in favor of construing this ordinance as being legislative and to be well within the referendum powers reserved by the people. . . ." (p. 458)]; *Johnston* v. *City of Claremont* (1958) 49 Cal.2d 826, 832 [323 P.2d 71] [change of property from single family residential zone to commercial zone], dis. on other grds., *Associated Home Builders etc.,* v. *City of Livermore* (1976) 18 Cal.3d 582, 596 n. 14 [135 Cal.Rptr. 41, 557 P.2d 473]; *Hughes* v. *City of Lincoln* (1965) 232 Cal.App.2d 741, 746-747 [43 Cal.Rptr. 306] [decision to fluoridate water]; *O'Loane* v. *O'Rourke* (1965) 231 Cal.App.2d 774, 784-785 [42 Cal.Rptr. 283] [resolution adopting general plan for city]; *Reagan* v. *City of Sausalito* (1962) 210 Cal.App.2d 618, 624 [26 Cal.Rptr. 775] [resolution to acquire land for city park]; see also Note, *The Scope of the Initiative and Referendum in California* (1966) 54 Cal.L.Rev. 1717, 1734-1736.)

The brief of amicus curiae Palo Alto Civic League raises an interesting argument, based on the nature of planned community districts, that any change of the regulations applicable to such a district is always a zoning change and therefore a legislative act subject to referendum. The argument runs as follows:

1. The development plan of a planned community district *is* the zone applicable to the property and defines the requirements of that zone (see Palo Alto Mun. Code, ch. 18.68.070(a)).

2. Resolution 5382, the subject of this appeal, modified the development plan for 101 Alma Street.

3. Resolution 5382 therefore amended the zoning of the property.

4. A zoning ordinance constitutes the exercise of a legislative function. (*Johnston* v. *City of Claremont, supra,* 49 Cal.2d 826, 834-835.)

5. The amendment of a legislative act is itself a legislative act. "Rezoning of use districts or changes of uses and restrictions within a district can be accomplished only through an amendment of a zoning ordinance, and the amendment must be made in the same mode as its original enactment." (*Johnston* v. *City of Claremont, supra,* 49 Cal.2d at p. 835.) Similarly, "A zoning ordinance as amended becomes in effect a different ordinance. Even if it be granted that a reclassification of an area as small as that involved in the instant case cannot be said to effect a new scheme, the same rule must necessarily be followed as would be applied if a larger area had been reclassified, and it may be observed that a piecemeal rezoning of small areas may result in a plan differing in vital particulars from that originally contemplated." (*Dwyer* v. *City Council* (1927) 200 Cal. 505, 515 [253 P. 932] [residential property rezoned commercial].)

6. Because Resolution 5382 modified the development plan and therefore amounted to a zoning change, the resolution was a legislative act subject to a referendum.

Conclusion 6 does not follow because of faulty premises at 3 and 5. The language in *Dwyer* that "A zoning ordinance as amended becomes in effect a different ordinance" must be read in the context of the factual setting there. *Dwyer* involved the rezoning of property from residential to commercial use, a significantly greater alteration of land use than in the present appeal. Second, the language quoted from *Johnston* is dictum. *Johnston,* like *Dwyer,* held only that rezoning from residential to commercial use is a legislative act subject to a referendum. Both *Dwyer* and *Johnston* recognize that only a legislative act, not an administrative act, is subject to referendum. (200 Cal. at p. 511; 49 Cal.2d at p. 834.) Finally, treating *any* modification of a P-C district as a legislative act is

inconsistent with the policy behind the legislative-administrative test, which permits the exercise of some judgment based on the costs and benefits of the referendum procedure.

Some changes in the development plan of a planned community district may well be legislative and subject to referendum. That determination must be made on a case-by-case basis. Here, Resolution 5382 did not amount to a substantial alteration of the P-C district, was not tantamount to a rezoning of the district, and therefore was not subject to referendum.

The judgment is affirmed.

Caldecott, P. J., and Brunn, J.,* concurred.

A petition for a rehearing was denied December 8, 1978, and appellants' petition for a hearing by the Supreme Court was denied February 1, 1979.

---

*Assigned by the Chairperson of the Judicial Council.