Filed 3/2/16  Certified for publication 3/16/16 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT, | D067578 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00042425-CU-TT-CTL) |
| CITY OF SAN DIEGO, | |
| Defendant and Respondent; | |
| BH PARTNERSHIP, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Briggs Law Corporation, Cory J. Briggs and Anthony N. Kim for Plaintiff and Appellant.

Jan I. Goldsmith, City Attorney, and Glenn T. Spitzer, Deputy City Attorney, for Defendant and Respondent.

Barnes & Thornburg, L. Rachel Lerman, Kevin F. Rising and David W. Nelson for Real Party in Interest and Respondent.

Plaintiff and petitioner San Diegans for Open Government (SDOG) appeals a judgment denying its petition for writ of mandate and complaint for declaratory and injunctive relief that challenged a decision by defendant and respondent City of San Diego (City) approving a real property lease with defendant and real party in interest BH Partnership (BH). The approval required an appraisal by an independent appraiser under City's Municipal Code and, on appeal, SDOG contends City erred by approving the lease because the evidence is insufficient to support its finding the appraisal of the property was performed by an independent appraiser.

FACTUAL AND PROCEDURAL BACKGROUND

Since 1953, BH and its predecessors have leased from City certain real property in Mission Bay Park on which it operates the Bahia Resort Hotel. On November 26, 2012, the city council approved a 40-year lease agreement that would extend BH's tenancy of that property. However, because that approval did not include a statement of the property's fair market value, approval of the lease agreement was placed on the city council's agenda for its February 26, 2013, meeting for reconsideration. BH hired appraiser Bruce Goodwin to establish the property's fair market value.

At city council's February 26, 2013, meeting, Goodwin appeared and discussed his $17.8 million appraisal of the fair market value of the property. James Barwick, director of City's real estate assets division, also appeared and stated Goodwin's methodology was sound. Although Goodwin's staff did not perform its own appraisal of the property's fair

2

market value, it had prepared and submitted an extensive economic model. Members of the city council questioned Goodwin regarding his independence. The city council included Goodwin's appraisal in its resolution and then approved the new lease agreement.

In April 2013, SDOG filed a petition for writ of mandate and complaint for declaratory and injunctive relief, challenging City's approval of the lease. SDOG's operative first amended petition and complaint alleged that City's approval of the lease did not comply with San Diego Municipal Code section 22.0901(a)(3).[1] It alleged Goodwin did not qualify as an independent fee appraiser under the San Diego Municipal Code because he was retained or otherwise compensated by one of the real parties in interest and the city council's resolution approving the lease did not contain a statement of the market value of the property as appraised by an independent fee appraiser or City staff.

On November 18, 2014, after considering written and oral arguments of counsel, the trial court issued a minute order denying the petition and complaint because it concluded substantial evidence supported City's finding that Goodwin was an independent fee appraiser. On December 4, the court entered its judgment against SDOG, denying all relief it sought. SDOG timely filed a notice of appeal.

---

[1] All statutory or municipal code references are to the San Diego Municipal Code unless otherwise specified.

3

DISCUSSION

I

*Standards of Review*

"A public entity's 'award of a contract, and all of the acts leading up to the award, are legislative in character.' [Citation.] '[T]he letting of contracts by a governmental entity necessarily requires an exercise of discretion guided by considerations of the public welfare.' [Citation.] '[T]he mere fact that a proceeding before a deliberative body may possess certain characteristics of the judicial process does not convert legislative action into an adjudication of a private controversy. [Citations.]' [Citation.] Thus, . . . the award of the contract[] . . . should be considered legislative action[]." (*Mike Moore's 24-Hour Towing v. City of San Diego* (1996) 45 Cal.App.4th 1294, 1303, fn. omitted.) Contrary to SDOG's assertion, the city council's approval of the lease between City and BH was legislative, and not adjudicatory, in nature.

"Review of a local entity's legislative determination is through ordinary mandamus under [Code of Civil Procedure] section 1085. 'Such review is limited to an inquiry whether the action was arbitrary, capricious or entirely lacking in evidentiary support. [Citation.]' " (*Mike Moore's 24-Hour Towing v. City of San Diego*, *supra*, 45 Cal.App.4th at p. 1303.) On appeal, we generally determine de novo the question of law whether the agency's decision was arbitrary, capricious, or entirely lacking in evidentiary support. (*Ibid*.) However, if the trial court's findings on foundational matters of fact may be conclusive on appeal, we review those findings for substantial evidence to support them. (*Ibid*.) Code of Civil Procedure section 1094.5, subdivision (c), provides: "Where

4

it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

"Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. We view the evidence in the light most favorable to the [decision] and accept as true all evidence tending to support the [decision], including all facts that reasonably can be deduced from the evidence. The evidence is sufficient to support a factual finding only if an examination of the entire record viewed in this light discloses substantial evidence to support the finding." (*Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99.) "There is a presumption the agency's findings are supported by substantial evidence, and appellants have the burden of demonstrating otherwise." (*Schutte & Koerting, Inc. v. Regional Water Quality Control Bd.* (2007) 158 Cal.App.4th 1373, 1384.)

Interpretation of a statute or local charter provision or ordinance is a question of law that we generally review independently, or de novo. (*Citizens for Responsible Equitable Environmental Development v. City of San Diego* (2010) 184 Cal.App.4th 1032, 1040-1041; *Bohbot v. Santa Monica Rent Control Bd.* (2005) 133 Cal.App.4th 456, 462.) When the language of a statute or ordinance is clear and unambiguous, there is no need for interpretation and we apply the statute or ordinance as written. (*Bohbot*, at

5

p. 462.)  Words used in a statute or ordinance should generally be given the meaning they bear in ordinary use.  (*Ibid.*)  However, the plain meaning rule does not preclude us from determining whether the literal meaning of a statute or ordinance comports with its legislative purpose.  (*Ibid.*)  "Courts must . . . independently judge the text of a statute [or ordinance], taking into account and respecting the agency's interpretation of its meaning, of course, whether embodied in a formal rule or less formal representation.  Where the meaning and legal effect of a statute [or ordinance] is the issue, an agency's interpretation is one among several tools available to the court.  Depending on the context, it may be helpful, enlightening, even convincing.  It may sometimes be of little worth.  [Citation.] Considered alone and apart from the context and circumstances that produce them, agency interpretations are not binding or necessarily even authoritative.  To quote the statement of the Law Revision Commission in a recent report, 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' "  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8; *Citizens for Responsible Equitable Environmental Development*, at pp. 1041-1042.)

## II

### *City Council's Approval of the Lease*

SDOG contends the city council erred by approving the lease between City and BH because the evidence is insufficient to support its finding the appraisal of the property

6

was performed by an "independent" fee appraiser within the meaning of section

22.0901.[2]

A

At the February 26, 2013, meeting of the city council, Robert Gleason, BH's chief financial officer and general counsel, appeared at the meeting on behalf of BH and discussed Goodwin's experience, credibility, and independence, stating:

> "I would note that Mr. Goodwin has been active in San Diego in the hospitality business and regionally, particularly in Central and South America, for over 30 years. He's the past president and Chairman Emeritus of the International Society of Hospitality Consultants. His extensive experience, I think at some point, has represented every hotel property on Mission Bay and probably most of the Port [District of San Diego] properties, including Princess, Starwood, Wyndham, Grupo Situr, Marriott, InterContinental, Hilton, and Hyatt; worked for major financial institutions, including GE Capital, Goldman Sachs, Strategic Hotel, Deutsche Bank, Equitable Real Estate Trust, Secured Capital, Wells Fargo, Bank of America, Lodging Capital partners, Tishman Realty, and Citigroup. So Mr. Goodwin . . . has extensive situation [sic].
>
> "And I would note, as far as the . . . *independence* question, just as when you have refinanced your house or other commercial situations and the bank has required an appraisal, *we paid for Mr. Goodwin's services. We provided financial information to allow him to perform his work. But we didn't direct his work. We didn't dictate the*

---

[2]    On September 18, 2015, City filed a request that we take judicial notice of the following exhibits: (1) Exhibit A (excerpts from Barron's Dictionary of Real Estate Terms); (2) Exhibit B (the International Society of Hospitality Consultants Code of Conduct); (3) Exhibit C (definitions from the Uniform Standards of Professional Appraisal Practice); and (4) Exhibit D (a DVD of the city council's February 26, 2013, meeting at which it approved the lease between City and BH). On October 8, we issued an order stating we would consider City's request for judicial notice concurrently with the appeal. We now grant City's request to take judicial notice of Exhibit D and deny its request to take judicial notice of Exhibits A, B, and C.

*outcome of his analysis, and his fee wasn't based on the outcome of the report*.  (Italics added.)

Barwick, City's director of real estate assets, stated: "I believe the methodology [used by Goodwin] was sound.  I believe Mr. Goodwin did a very diligent research in arriving at his numbers, did a discounted cash flow, which I believe is a very reasonable way to value this property."

Goodwin appeared at the hearing, stating he "probably worked on almost every hotel here [in San Diego] developed before 2004."  City councilmember Zapf asked Goodwin whether "the Evans family [i.e., BH]" at any time asked him "to skew things in their favor or anything like that?"  Goodwin replied:

> "No. [¶]  I've worked for competitors.  I've worked for competitors of the Bahia.  I've worked for developers.  I've worked for financial institutions.  *My independence is absolutely my life blood.  I cannot even remotely consider bowing to anything of that nature*."  (Italics added.)

Zapf asked Goodwin whether his reputation would be at stake if he provided a valuation skewed in favor of who paid for it.  He replied, "Of course."

City council President Gloria asked Goodwin whether he was "in any way dependent on—or subject to the control, restriction, modification, or limitation by any given outside source?"  Goodwin replied that he was governed by the specific provisions of the Code of Conduct of the ISHC [i.e., International Society of Hospitality Consultants] on conflict of interest and independence.  When Gloria asked him whether anyone influenced his decision or valuation, Goodwin replied, "Absolutely not."  When

8

Gloria asked him whether BH gave him a specific number to arrive at, Goodwin replied, "Absolutely not." Gloria asked him:

> "During the course of your development of the numbers that we're looking at and the number we're looking at today, beyond retaining your services, did they [i.e., BH] direct you any particular way, ask you to look at anything in a specific manner?"

Goodwin replied, "No." City council included Goodwin's $17.8 million appraisal of the property in its resolution and then approved the new lease agreement between City and BH.

SDOG filed the instant amended petition for writ of mandate and complaint for declaratory and injunctive relief, challenging City's approval of the lease on the ground that City's approval of the lease did not comply with section 22.0901(a)(3). SDOG argued Goodwin did not qualify as an independent fee appraiser under the San Diego Municipal Code because he was retained or otherwise compensated by one of the real parties in interest (i.e., BH) and the city council's resolution approving the lease did not contain a statement of the market value of the property as appraised by an independent fee appraiser or City staff.

The trial court issued a minute order denying the petition because substantial evidence supported City's finding that Goodwin was an independent fee appraiser and then entered its judgment against SDOG, denying all relief it sought.

B

Based on our review of the record, we conclude there is substantial evidence to support the city council's implicit finding that Goodwin was an "independent" fee appraiser within the meaning of section 22.0901(a), which provides:

> "No real property belonging to the City shall be leased except in pursuance of a resolution passed by a majority vote of all members of the Council, which shall contain the following: [¶] (1) [t]he reason for leasing such real estate; [¶] (2) [a] description of the real estate to be leased; [and] (3) [a] statement of the market value of such real estate as appraised by an *independent* fee appraiser or City staff."[3] (Italics added.)

Gleason represented to the city council that although BH paid for Goodwin's services and had provided him with financial information to allow him to perform his appraisal of the property, BH did not direct Goodwin's work or dictate the outcome of his appraisal, and his fee was not based on the outcome of his appraisal. Goodwin told the city council that BH had never asked him "to skew things in their favor or anything like that," explaining that his independence is his life blood and he could not "even remotely consider bowing to anything of that nature." He stated his reputation would be at stake if he provided a valuation skewed in favor of the client who paid for it. Goodwin adamantly stated no one had influenced his valuation or given him a specific number to arrive at. Goodwin denied that BH had directed him "to look at anything in a specific manner." Under any

---

[3]    It would appear that a more useful appraisal for the city council when it considers a proposed lease of City's real property would be an appraisal of the fair market *rental* value of that property, rather than an appraisal of its "market value" (i.e., fair market sale value) as required by section 22.0901. The city council may consider amending section 22.0901 in the future to provide for an appraisal of a property's fair market *rent*.

reasonable definition of "independence" adopted for purposes of applying section 22.0901, the above evidence is adequate to support the city council's finding that Goodwin was an independent fee appraiser within the meaning of that provision.

SDOG asserts we should adopt the definition of "independent" as set forth in Black's Law Dictionary (10th ed. 2014) at page 88, column 2, i.e., "[n]ot subject to the control or influence of another . . . ." Assuming arguendo, without deciding, that definition should apply to the term "independent" as used in section 22.0901, there nevertheless is substantial evidence to support the city council's finding Goodwin satisfied that standard for an independent fee appraiser.[4] The evidence summarized above provides adequate support for a finding by the city council that Goodwin was *not* subject to the control or influence of BH or anyone else and was therefore an independent fee appraiser.

Contrary to SDOG's argument, the purported lack of "unbiased" evidence does not show there is insufficient evidence for that finding by the city council. The statements by Gleason and Goodwin are not necessarily deemed incredible, unreliable, and/or untrustworthy simply because they may have been self-serving, as SDOG argues. (*Jutzi v. County of Los Angeles* (1987) 196 Cal.App.3d 637, 653.) Rather, the city council

---

4    For purposes of deciding this appeal, we need not, and do not, decide the specific definition of "independent" under section 22.0901. Rather, because under any reasonable interpretation of that term, based on its plain and ordinary meaning, the city council could determine Goodwin was an "independent" fee appraiser under that ordinance, we need only decide whether there is substantial evidence to support its finding that he was, in fact, an independent fee appraiser.

11

could rationally consider the purported self-serving nature of their statements and nevertheless conclude they provided sufficient evidence of Goodwin's independence. To the extent SDOG cites evidence and/or inferences from the evidence that would have supported a contrary finding by the city council, it misconstrues and/or misapplies the substantial evidence standard of review. (*Pedro v. City of Los Angeles*, *supra*, 229 Cal.App.4th at p. 99; *Schutte & Koerting, Inc. v. Regional Water Quality Control Bd.*, *supra*, 158 Cal.App.4th at p. 1384.) The fact that BH paid Goodwin to perform the appraisal does not necessarily show he was not independent, as SDOG argues.

To the extent SDOG argues section 22.0901 requires an appraiser to be an "MAI" (member of the Appraisal Institute) appraiser in order to be an "independent" fee appraiser under its provisions, SDOG does not cite any case or other authority holding, and does not otherwise persuade us, that an appraiser cannot be considered independent, whether under section 22.0901 or otherwise, unless he or she is a member of a particular appraisal organization (e.g., an MAI appraiser).

To the extent SDOG argues the term "independent" under section 22.0901 should be interpreted in the same manner as it is applied in the lease agreement between City and BH, we disagree. As SDOG notes, the lease agreement provides that future rent adjustments are to be determined by a "qualified professional independent real estate appraiser." It further provides the appraiser shall be selected by the mutual consent of City and BH from a list of appraisers approved by City. However, if the parties do not agree on a particular appraiser, then City and BH shall each select an appraiser and those two appraisers shall select a third appraiser to make the rent adjustment. Contrary to

12

SDOG's assertion, the lease agreement's procedure for making future rent adjustments has little relevance to, and does not establish, the meaning of an "independent" fee appraiser under section 22.0901. First, because the lease agreement was entered into by the parties after section 22.0901 was originally adopted and subsequently amended, its use of the term "independent" cannot be determinative of the legislative intent underlying section 22.0901. Second, although the lease agreement uses the term "independent" appraiser, it further provides a mechanism for selecting an "independent" appraiser from a presumably large base of qualified "independent" appraisers.[5] To the extent SDOG argues that mechanism should be made part of the definition of an "independent" fee appraiser in section 22.0901, we disagree. Absent an express provision in that ordinance, it cannot be reasonably inferred the city council intended "independent," as used in that ordinance, to require a potentially complex method for selecting an appraiser, rather than simply any qualified "independent" appraiser.

Contrary to SDOG's assertion, the fact City's attorney declined to provide an opinion whether Goodwin was an "independent" fee appraiser under section 22.0901 does not support a reasonable inference that he was not an independent fee appraiser. Rather, the question of whether Goodwin was an "independent" fee appraiser under section 22.0901 was a question of fact for the city council, as the legislative body

---

5    Likewise, although SDOG does not expressly so argue, we also do not believe the term "independent" fee appraiser as used in section 22.0901 should be limited to only an appraiser contained on the list of appraisers approved by City to which the lease agreement refers.

approving the proposed lease, to decide. Although City's attorney apparently attempted to assist the city council with its understanding of the applicable standard for "independent," the ultimate question of fact of whether Goodwin was an "independent" fee appraiser was not a question for City's attorney to decide. As we concluded above, there is substantial evidence to support the city council's finding that Goodwin was an "independent" fee appraiser within the meaning of section 22.0901.[6]

Finally, contrary to SDOG's apparent assertion, no independent corroboration of Goodwin's appraisal was required by section 22.0901 for the city council to approve the lease between City and BH. Although Barwick ultimately agreed with Goodwin's methodology and implicitly concurred with his appraisal, corroboration of Goodwin's appraisal by Barwick or any other person was not required for the city council to approve the lease.

Because there is substantial evidence to support the city council's finding Goodwin was an independent fee appraiser within the meaning of section 22.0901, we conclude SDOG has not carried its burden to show the city council abused its discretion by approving the lease between City and BH.[7]

---

[6] Because we do not rely on *San Franciscans Upholding the Downtown Plan v. City and County of San Francisco* (2002) 102 Cal.App.4th 656 in disposing of this appeal, we need not, and do not, address SDOG's discussion of that case in its appellant's opening brief.

[7] To the extent SDOG separately argues City was bound to follow section 22.0901, it has not carried its burden on appeal to persuade us City did not do so in the circumstances of this case.

14

III

*BH's Request for Sanctions Against SDOG*

In its respondent's brief, BH requests that we impose sanctions against SDOG for its purportedly frivolous appeal in this matter. We have considered SDOG's arguments in this appeal and decline to impose sanctions against it. (Code Civ. Proc., § 907; *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1261.)

DISPOSITION

The judgment is affirmed.


McDONALD, Acting P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.

Filed 3/16/16

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGANS FOR OPEN GOVERNMENT, | D067578 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00042425-CU-TT-CTL) |
| CITY OF SAN DIEGO, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent; | |
| BH PARTNERSHIP, | |
| Real Party in Interest and Respondent. | |

THE COURT:

The opinion in this case filed March 2, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McDONALD, Acting P. J.

Copies to: All parties

2